1

**HUA GALLAI, LLP**
Nicholas T. Hua, Bar No. 231035

2
Nick@hua-gallai.com
Giacomo Gallai, Bar No. 227544

3
gg@hua-gallai.com
Steven C. Gonzalez, Bar No. 191756

4
Steve@hua-gallai.com
433 N. Camden Drive, 4th Floor

5
Beverly Hills, CA 90210
Tel:    (310) 279-5239

6
Fax:    (480) 393-4433

7
Attorneys for Plaintiff GARY D. DARSEY,
individually, and on behalf of others

8
similarly situated

9

10

11
**UNITED STATES DISTRICT COURT**

12
**CENTRAL DISTRICT OF CALIFORNIA**

13

14
GARY D. DARSEY, et al.,

15
Plaintiffs,

16
v.

17
WAG LABS, INC., et al.,

18
Defendants.

19

20

21

22

23

24

25

26

27

28

CASE NO.:  2:17-CV-7014-FMO-JPR

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR CLASS CERTIFICATION AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**

Date:       November 1, 2018
Time:       10:00 a.m.
Before:    Hon. Fernando M. Olguin
Ctrm.:     6D

---

1

# TABLE OF CONTENTS

2

3

I.   INTRODUCTION .................................................................................1

4

II.  FACTUAL BACKGROUND...............................................................1

5

   A. The Parties and Plaintiff's Allegations.......................................1

6

   B. The Parties Litigate at Arm's Length .........................................3

7

   C. The Mediation and Settlement.....................................................3

8

III. OVERVIEW OF THE PROPOSED SETTLEMENT............................4

9

   A. Non-Reversionary Settlement Amount .......................................4

10

   B. Net Settlement Amount ...............................................................5

11

   C. Settlement Administrator.............................................................6

12

   D. PAGA Payment ...........................................................................6

13

   E. Class Representative Service Award............................................6

14

   F. Attorneys' Fees and Costs ..........................................................7

15

   G. Notice to Class.............................................................................7

16

   H. Class Release ...............................................................................8

17

IV.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ....8

18

   A. Legal Standard for Preliminary Approval ..................................8

19

   B. The Proposed Settlement Is Fair, Adequate, and Reasonable...........................10

20

     1.  The Settlement Results from Serious, Informed, Non-Collusive Negotiations..........................10

21

     2.  The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class....................................11

22

     3.  The Settlement Has No Obvious Deficiencies and Falls Within the Range of Possible Approval........................12

23

       a.  The Strength of Plaintiff's Case...........................................12

24

       b.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation ................................13

25

26

       c.  The Risk of Maintaining Class Action Status Through Trial ...................16

27

28

---

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

d. The Amount Offered in Settlement ............................................ 17

e. The Experience and Views of Counsel ..................................... 18

C. The Proposed Settlement Satisfies Rule 23 ....................................... 19

1. The Settlement Class Meets the Requirements of Rule 23(a) ....................... 19

2. The Settlement Class Meets the Requirements of Rule 23(b)(3) ................. 20

D. The Proposed Settlement of FLSA Claims Satisfies 29 U.S.C. § 216(b) .......... 22

V. THE COURT SHOULD APPROVE THE PROPOSED PAGA SETTLEMENT .. 22

VI.     THE COURT SHOULD ORDER THE PROPOSED CLASS NOTICE ........... 23

A. The Settlement Provides the Best Notice Practicable ......................................... 23

B. The Proposed Form of Notice Adequately Informs Class Members of Their Rights in Connection with the Settlement ........................................................... 24

C. Notice of the Settlement Will Be Provided to Appropriate Officials ................. 25

VII.    THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL ........ 25

VIII.     CONCLUSION ............................................................................. 25

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) ..............................................................16

*Altamirano v. Shaw Indus., Inc.*,
No. 13-CV-00939-HSG, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ...................11

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)...................................19, 22

*Byrne v. Santa Barbara Hosp. Servs., Inc.*,
No. EDCV17527JGBKKX, 2017 WL 5035366 (C.D. Cal. Oct. 30, 2017)..............16

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ...................................................................12

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ...................................................................9

*Collinge v. IntelliQuick Delivery, Inc.*,
No. 2:12-CV-00824 JWS, 2015 WL 1292444 (D. Ariz. Mar. 23, 2015)..................21

*Dashiell v. County of Riverside*,
No. EDCV1500211JGBSPX, 2018 WL 3629915 (C.D. Cal. July 19, 2018) ............10

*Dynamex Operations West, Inc. v. Superior Court*,
4 Cal. 5th 903 (2018) ............................................................14, 15, 21, 22

*Epic Systems Corp. v. Lewis*,
— U.S. —, 138 S. Ct. 1612, 200 L.Ed. 2d 889 (2018).........................................1, 15

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989) ...................................................................8

*G.F. v. Contra Costa County*,
No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ..................11

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ...................................................................8

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................19, 20, 21

*In re Beef Indus. Antitrust Litig.*,
607 F.2d 167 (5th Cir. 1979) ...................................................................9

*In re Bluetooth Headset Products Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...................................................................10

*In re Checking Account Overdraft Litigation*,
275 F.R.D. 654 (S.D. Fla. 2011)...................................................................9

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d. Cir. 1995)...................................................................16

iii

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) ................................................................9
*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ......................................................................13
*Lynn's Food Stores v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ..............................................................10, 22
*Ma v. Covidien Holding, Inc.*,
   No. SACV 12–02161–DOC (RNBx), 2014 WL 360196 (C.D. Cal. Jan. 31, 2014)....9
*McKenzie v. Fed. Exp. Corp.*,
   No. CV 10–02420 GAF (PLAx), 2012 WL 2930201 (C.D. Cal. July 2, 2012)........23
*Morris v. Ernst & Young, LLP*,
   834 F.3d 975 (9th Cir. 2016) ...................................................................14, 15
*Murray v. Principal Fin. Grp., Inc.*,
   613 F.3d 943 (9th Cir. 2010) ........................................................................15
*Norris-Wilson v. Delta-T Grp., Inc.*,
   270 F.R.D. 596 (S.D. Cal. 2010) ...................................................................21
*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ..........................................................................9
*Rannis v. Recchia*,
   380 F. App'x. 646 (9th Cir. 2010) .................................................................24
*S.G. Borello & Sons, Inc. v Dept. of Industrial Relations*,
   48 Cal. 3d 341 (1989) ...................................................................................13
*Satchell v. Fed. Express Corp.*,
   Nos. C03–2659 SI, C 03–2878 SI, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007).....11
*Schaffer v. Litton Loan Servicing, LP*,
   No. CV 05-07673-MMM, 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012)..............24
*Seminiano v. Xyris Enter., Inc.*,
   602 F. App'x 682 (9th Cir. 2015)...................................................................10
*Smith v. Wm. Wrigley Jr. Co.*,
   No. 09–60646–CIV, 2010 WL 2401149 (S.D. Fla. June 15, 2010) ............................9
*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) .........................................................................11
*Tan v. GrubHub, Inc.*,
   No. 15-cv-05128-JSC, 2016 WL 4721439 (N.D. Cal. July 19, 2016) ......................16
*Villalpando v. Exel Direct Inc.*,
   303 F.R.D. 588 (N.D. Cal. 2014)....................................................................21
*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ..................................................................19, 20

**STATUTES**

28 U.S.C. § 1715 ...................................................................................................25
29 U.S.C. § 216 .........................................................................................4, 10, 22
Cal. Lab. Code § 2699 .....................................................................................22, 25

## OTHER AUTHORITIES

Manual for Complex Litigation, Fourth § 21.61 ....................................................8
Manual for Complex Litigation, Fourth § 21.63 ....................................................8
Manual for Complex Litigation, Fourth § 21.632 ..........................................19, 25
Manual for Complex Litigation, Fourth, § 21.633 ...............................................25
Manual for Complex Litigation, Third, § 30.42 ....................................................9

## RULES

Fed. R. Civ. P. 23(a) .....................................................................................19, 20
Fed. R. Civ. P. 23(b)(3) ...........................................................................4, 21, 23
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................23, 24
Fed. R. Civ. P. 23(e) ..............................................................................................8
Fed. R. Civ. P. 23(e)(1) ........................................................................................23
Fed. R. Civ. P. 23(e)(2) ..........................................................................................9

## TREATISES

Newberg on Class Actions (4th ed. 2002) § 11.22 et seq. ......................................8
Newberg on Class Actions (4th ed. 2002) § 11.25 ................................................8

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Gary D. Darsey ("Plaintiff"), individually and on behalf of all others similarly situated, brings this unopposed motion seeking provisional certification of a settlement class ("Class") of approximately 37,541 part-time dog walkers, current and former, who have performed walks in California during the Covered Period using Defendants' Wag app ("Wag walkers"), pursuant to a settlement reached in this case. Plaintiff also seeks preliminary approval of an FLSA collective settlement. After more than a year of work on this matter, including active discovery and litigation, settlement discussions with Defendants and their counsel, a mediation session with Louis Marlin, Esq., and further discussions and negotiations to flesh out the settlement, the parties now seek the Court's preliminary approval of this settlement.

The mediation and subsequent discussions concluded in a settlement involving over a million dollars of monetary relief on a non-reversionary, common fund basis. This result is notable because all but a handful of the putative class members are parties to arbitration agreements containing class waivers. Consequently, and particularly in light of the recent decision in *Epic Systems Corp. v. Lewis*, — U.S. —, 138 S. Ct. 1612, 200 L.Ed. 2d 889 (2018), Plaintiff's ability to maintain this action as a class, and obtain any relief on behalf of these putative class members, has been in serious doubt, which is why Plaintiff is grateful the Parties reached a settlement. The parties reach this settlement through arm's length bargaining after sufficient investigation, discovery, and analysis of documents and arguments before and during mediation. Having reached a fair and reasonable settlement, Plaintiff respectfully seeks approval of this unopposed motion.

## II.     FACTUAL BACKGROUND

### A.     The Parties and Plaintiff's Allegations

Defendants operate in the so-called gig economy. They operate a website and

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

mobile app that they state dog owners can use to "hire on-demand for dog walking, dog sitting, or dog boarding services." https://wagwalking.com/ Technology and business writers compare Wag to Uber, but providing dog-walking and care services, rather than rides. *See* https://gizmodo.com/dog-walking-app-wag-which-is-kind-of-like-an-uber-for-1826029927; https://www.bloomberg.com/news/articles/2017-10-16/wag-the-uber-for-dog-walking-is-drawing-uber-like-scrutiny As with Uber and other gig economy companies, Wag classifies its walkers as independent contractors. Unlike Uber, however, almost all of the dog walkers work only occasional small jobs.

Plaintiff and the proposed class and collective are former or current Wag dog walkers.[1] The proposed class also provide other services, such as dog sitting, dog boarding, and even occasional cat care. However, the proposed class primarily perform dog walking duties for Wag. Plaintiff has alleged in this action that Wag misclassified the proposed class, and that the proposed class are properly regarded as employees. Plaintiff asserts that Wag sets policies for the proposed class that control the manner and means by which the proposed class perform their duties, not just the ultimate result. Moreover, Plaintiff asserts that the proposed class perform work that is the essence of the usual course of Wag's business.

Based on this general theory, and on more detailed allegations and evidence obtained in the course of discovery, Plaintiff has filed a First Amended Complaint, asserting the following causes of action: (1) Violation of California Labor Code – Misclassification; (2) California Labor Code – Failure to Pay All Wages; (3) California Labor Code § 558; (4) Failure to Provide Meal Periods or Compensation in Lieu Thereof – Labor Code §§ 226.7, 512, IWC Wage Order 4-2001; (5) Failure to Provide Rest Periods or Compensation in Lieu Thereof – Labor Code §§ 226.7, IWC Wage

---

[1] For ease of reference, Plaintiff will refer to the members of the proposed Rule 23 class and the proposed FLSA collective together as the "proposed class" or as the "Settlement Class," the term used in the settlement agreement.

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Order 4-2001; (6) Failure to Provide and/or Pay Sick Leave; (7) California Labor Code Section 200 et seq. – Waiting Time Penalties for Failure to Pay Wages Earned; (8) Labor Code § 1197.1; (9) Failure to Reimburse Business Expenses – Labor Code § 2802; (10) Failure to Provide Wage Statements and Keep Records Required by Labor Code § 226; (11) Fair Labor Standards Act – Failure to Pay Wages and Minimum Wage; (12) Business and Professions Code § 17200 et seq. – Unfair Competition; and (13) For Penalties Pursuant to the Labor Code Private Attorneys General Act.

**B.     The Parties Litigate at Arm's Length**

Plaintiff filed this action September 22, 2017. Plaintiff's counsel are experienced employment attorneys who have litigated many wage and hour class actions, both as plaintiffs' counsel and as defense counsel. The Defendants also have experienced and competent counsel. The proposed settlement was the result of arm's length litigation and negotiation that developed over numerous months following the filing of this litigation, including through formal discovery procedures such as disclosures under the Federal Rules of Civil Procedure as well as information exchange of information and documents pursuant to the mediation. After several months of litigation, including exchange of information, the parties agreed to participate to mediation.

**C.     The Mediation and Settlement**

On February 27, 2018, the parties and their attorneys participated in a mediation with respected attorney Louis Marlin of JAMS, formerly with plaintiffs' boutique firm Marlin & Saltsman. (See Declaration of Nicholas T. Hua ("Hua Decl.") ¶ 12.) The mediation was successful in yielding a memorandum of understanding, but negotiations continued for months to reach a final long form settlement agreement, and resolve outstanding issues, including the assertion of the claims under the Private Attorney General Act and stipulating to the First Amended Complaint. (*Id.*) The proposed settlement is embodied in the Stipulation of Settlement of Class Action and Release of Claims, attached as Exhibit A to the Hua Declaration.

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

1  As detailed below, the settlement provides monetary relief to a proposed class of

2  Wag walkers in California. The settlement also seeks additional monetary relief for

3  any Settlement Class Members who opt in to a proposed FLSA collective action. For

4  this settlement only, the parties agree the settlement satisfies each of the requirements

5  for certification as a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure

6  and that it is suitable for certification as an opt-in collective action under the FLSA,

7  pursuant to 29 U.S.C. § 216(b). Further, the settlement is fair and reasonable, and

8  confers a substantial benefit on the proposed class. Accordingly, Plaintiff requests that

9  the Court preliminarily approve the settlement, certify the class and collective action

10 for settlement purposes, set the deadline for filing objections to the settlement, approve

11 the proposed notice to class members, and schedule a final approval hearing.

12  ### III.   OVERVIEW OF THE PROPOSED SETTLEMENT

13  The key terms of the settlement agreement (Hua Decl., Ex. A) are as follows:

14  **A.   Non-Reversionary Settlement Amount**

15  Defendants agree to pay One Million Fifty Thousand Dollars ($1,050,000) to

16 resolve the Released Claims in the First Amended Complaint, as the Maximum

17 Settlement Fund. Defendants will separately pay the Settlement Administration Costs,

18 currently estimated at approximately Seventy-Five Thousand Dollars ($75,000), *in*

19 *addition* to the settlement amount of $1,050,000. All of the Maximum Settlement Fund

20 will be distributed to the Settlement Class Members and as otherwise approved by the

21 Court, to Class Counsel and the State of California.

- The Maximum Settlement Fund will include the Individual Settlement
  Payments, the Class Representative Service Award, the Class Counsel
  Award, and the PAGA Payment.
- After deducting the PAGA Payment, the Class Representative Service
  Award, and the Class Counsel Award, *all* of the remaining Net Settlement
  Amount will be distributed to the Settlement Class Members as Individual

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Settlement Payments. There will be *no reversion* to the Defendants.

- Members of the putative class may opt out of the settlement. If they remain in the Settlement Class, they may opt in to the FLSA collective. Settlement Class Members have three options: (1) if they do nothing, they will be in the Settlement Class but not part of the FLSA collective, and they would release their claims against Defendants, except FLSA claims; (2) if they opt out, they will not participate in the Settlement Class, will not receive an Individual Settlement Payment, and will not release any claims; and (3) if they submit an FLSA opt-in form, they will be Settlement Class Members and part of the FLSA collective, will release their claims including FLSA claims, and their Individual Settlement Payment will include additional FLSA consideration.

- To determine Individual Settlement Payments, the Settlement Administrator will calculate the total Compensable Walks for all Settlement Class Members. Those Settlement Class Members who timely opt in to the FLSA Collective will be deemed to have 125% of, or 1.25 x, their Compensable Walks, as enhanced consideration for resolving their FLSA claims. The Compensable Walks for each Settlement Class Member will be divided by the total Compensable Walks for all Settlement Class Members, all as so modified. This will yield a Payment Ratio for each Settlement Class Member, which will be applied to the Net Settlement Amount to calculate each Settlement Class Member's Individual Settlement Payments.

(Hua Decl. ¶ 13.)

**B.      Net Settlement Amount**

The Net Settlement Amount will be allocated and treated as business expense reimbursement payments, penalties, and interest. The Settlement Administrator shall issue a Form 1099 to each recipient of an Individual Settlement Payment. Settlement checks will be mailed by First-Class U.S. Mail to Settlement Class Members at their

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

last known mailing addresses no later than twenty-five (25) calendar days after the Effective Date. Checks issued to Settlement Class Members will be valid and negotiable for ninety (90) days from the date of issuance. If a settlement check is uncashed after 60 days, the Settlement Administrator will send a notice to the payee at his or her last known address, advising that the check will expire after the 90th day. The Settlement Class Member may request reissuance if a check is destroyed, lost, or misplaced. There is no cy pres payment provision—rather, if an Individual Settlement Payment check has not been cashed within 90 days, the funds represented by that check will be tendered to the Department of Industrial Relations Unpaid Wage Fund, where it may be claimed by that Settlement Class Member. (Hua Decl. ¶ 14.)

**C.     Settlement Administrator**

The parties have agreed to use Rust Consulting, Inc. as a third-party settlement administrator to administrate the settlement. Defendants will separately pay the costs of settlement administration, in addition to paying the Maximum Settlement Fund. Settlement Administration Costs are currently estimated at approximately Seventy-Five Thousand Dollars ($75,000). (Hua Decl. ¶ 15.)

**D.     PAGA Payment**

The settlement allocates fifty thousand dollars ($50,000) to resolution of claims under PAGA. That number represents approximately five percent (5%) of the total settlement of slightly over a million dollars. Of that $50,000, seventy-five percent (75%), or thirty-seven thousand five hundred dollars ($37,500), will be paid to the State of California via payment to the Labor and Workforce Development Agency. The remaining twenty-five percent (25%), or twelve thousand five hundred dollars ($12,500), will be included in the Net Settlement Amount and distributed to Settlement Class Members, pro rata, in their Individual Settlement Payments. (Hua Decl. ¶ 16.)

**E.     Class Representative Service Award**

Plaintiff Darsey, having spent a substantial amount of time and effort working

on this matter with Plaintiff's counsel for the benefit of the class, will seek approval from the Court for a Class Representative Service Award of up to Fifteen Thousand Dollars ($15,000), to be payable from the Maximum Settlement Fund. The Class Representative Service Award will be in addition to the Plaintiff's Individual Settlement Payment as a Settlement Class Member.

**F.    Attorneys' Fees and Costs**

Class Counsel will apply to the Court for an award for attorneys' fees not to exceed one-third of the sum of the Maximum Settlement Fund of $1,050,000 plus the estimated Settlement Administration Costs of $75,000. Thus, Class Counsel will ask the Court to approve an attorneys' fees award not to exceed $375,000, as one third of $1,125,000. Class Counsel will also apply to the Court for reimbursement of their costs in prosecuting this case, in an amount not to exceed $5,420.40. (Hua Decl. ¶¶ 34, 36.) Defendants will not object to that application. Defendants shall issue the appropriate IRS tax reporting forms to Class Counsel for the payment of attorneys' fees and costs.

**G.    Notice to Class**

The Parties submit a proposed Notice Packet, including a proposed Notice of Class Action Settlement ("Notice"). (Hua Decl., Ex. B.) The Notice informs each Settlement Class Member that, to receive an Individual Settlement Payment, they need only keep the Settlement Administrator apprised of their current mailing address. The Notice sets forth the release to be given by all Settlement Class Members who participate in the class and/or the FLSA Collective. The Notice will state the Settlement Class Member's starting and ending dates of activation on the Wag app, number of Compensable Walks during the Class Period, and estimated Individual Settlement Payment. The Notice Packet will also contain an opt-in form for the FLSA Collective. The Notice will state that Settlement Class Members who wish to opt in to the FLSA Collective should submit the opt-in form.

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

**H.    Class Release**

Upon the Court's final approval of this Settlement Agreement and execution of all the terms outlined herein, the Settlement Class will fully and finally release Defendants and Released Parties (defined as Defendants' past, present, and/or future, direct and/or indirect, officers, directors, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers) from all causes of action and factual or legal theories that were alleged in the operative complaint or reasonably could have been alleged based on the facts and legal theories contained in the First Amended Complaint.

## IV.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

**A.    Legal Standard for Preliminary Approval**

Federal law strongly encourages settlements in the context of class actions. *See, e.g.*, *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits"). This settlement falls within the range of reasonableness, warranting preliminary approval. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Newberg on Class Actions (4th ed. 2002) § 11.25.

Court approval is required before any action certified as a class may be settled or compromised. Fed. R. Civ. P. 23(e). Class action settlements are subject to a three-step process. Manual for Complex Litigation, Fourth ("Manual") §§ 21.61, 21.63. First, the court makes a preliminary evaluation to determine whether the settlement is fair, adequate, and reasonable. If the settlement is approved, then a notice is disseminated to the class members. Then, at a final approval hearing, class members who object to the settlement may state their objections to the Court, which will determine whether to finally approve the settlement. This procedure safeguards class members' procedural

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

1    due process rights and enables the Court to fulfill its role as the guardian of class

2    interests. *See* Newberg on Class Actions (4th ed. 2002) § 11.22 et seq.

3         In deciding whether to approve a proposed class action settlement, the Court

4    must determine whether a proposed settlement is "fair, reasonable, and adequate." Fed.

5    R. Civ. P. 23(e)(2); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

6    625 (9th Cir. 1982); *Ma v. Covidien Holding, Inc.*, No. SACV 12–02161–DOC

7    (RNBx), 2014 WL 360196, at *3 (C.D. Cal. Jan. 31, 2014). Courts have discretion to

8    approve settlements that are fair, are not collusive, and account for "all the normal

9    perils of litigation as well as the additional uncertainties inherent in complex class

10   action." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179 (5th Cir. 1979); *see also*

11   *Smith v. Wm. Wrigley Jr. Co.*, No. 09–60646–CIV, 2010 WL 2401149, at *2 (S.D. Fla.

12   June 15, 2010) ("Preliminary approval is appropriate where the proposed settlement is

13   the result of the parties' good faith negotiations, there are no obvious deficiencies and

14   the settlement falls within the range of reason."); *In re Checking Account Overdraft*

15   *Litigation*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) ("A presumption of fairness,

16   adequacy, and reasonableness may attach to a class settlement reached in arm's-length

17   negotiations between experienced, capable counsel after meaningful discovery.")

18   (quoting Manual for Complex Litigation, Third, § 30.42).

19        Relevant factors include "the strength of plaintiffs' case; the risk, expense,

20   complexity and likely duration of further litigation; the risk of maintaining class action

21   status throughout the trial; the amount offered in settlement; the extent of discovery

22   completed, and the stage of the proceedings; the experience and views of counsel; the

23   presence of a governmental participant; and the reaction of the class members to the

24   proposed settlement." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir.

25   1992). The Court may consider the informed recommendations of counsel and parties.

26   The recommendation of experienced counsel carries significant weight in determining

27   the reasonableness of a proposed settlement. *Kirkorian v. Borelli*, 695 F. Supp. 446,

28

---

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

451 (N.D. Cal. 1988). Here, all of these factors, except for the reaction of the class members, which cannot yet be determined, support granting preliminary approval.

FLSA claims may be settled with the approval of a District Court, in the context of an action under 29 U.S.C. § 216(b). Initiation of a lawsuit by employees under the FLSA provides some assurance of an adversarial context, making settlements permissible. *See Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982); *accord Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015); *see also Dashiell v. County of Riverside*, No. EDCV1500211JGBSPX, 2018 WL 3629915, at *2 (C.D. Cal. July 19, 2018) (noting that district courts in the Ninth Circuit have relied on the standard adopted by the Eleventh Circuit, which considers whether the settlement is a fair and reasonable resolution of a bona fide dispute).

**B.    The Proposed Settlement Is Fair, Adequate, and Reasonable**

    **1.    The Settlement Results from Serious, Informed, Non-Collusive Negotiations**

As a starting point, the Court should assure itself the settlement was not the product of collusion among the negotiating parties. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). To that end, courts look to whether the proposed settlement is a product of arm's length negotiations, performed by counsel well versed in the type of litigation at issue.

In this instance, neither the process used by the parties to negotiate the settlement nor the settlement's terms suggest inappropriate collusion. Plaintiff's counsel are experienced employment attorneys who have litigated many wage and hour class actions, both as plaintiffs' counsel and as defense counsel. (Hua Decl. ¶¶ 19, 20.) They understand both sides' perspectives and valuation of such cases, including what settlement might be fair, reasonable, and adequate given the strengths and weaknesses of a case. In addition, this settlement was negotiated over the course of a full day, into the evening, with the assistance of a respected mediator, Louis Marlin,

1   who was for many years an accomplished litigator. (Hua Decl. ¶ 12); *see G.F. v.*

2   *Contra Costa County*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal.

3   July 30, 2015) (the assistance of an experienced mediator in the settlement process

4   confirms the settlement is non-collusive); *accord Satchell v. Fed. Express Corp.*, Nos.

5   C03–2659 SI, C 03–2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007)

6   (same). The parties also engaged in further settlement discussions to hammer out the

7   terms of the long form settlement agreement, taking approximately seven additional

8   months since mediation to work out all details of the agreement.

9       **2.     The Settlement Does Not Improperly Grant Preferential Treatment**

10      **to Class Representatives or Segments of the Class**

11      Next, the Court should examine whether the settlement agreement provides

12  preferential treatment to any settlement class member. This analysis looks to whether

13  there are disparities among benefits paid to class members and, if so, whether the

14  settlement "compensates class members in a manner generally proportionate to the

15  harm they suffered on account of [the] alleged misconduct." *See Altamirano v. Shaw*

16  *Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24,

17  2015); *see also G.F.*, *supra*, 2015 WL 4606078, at *13-14 (analyzing whether the

18  settlement singles out particular class members or instead "appears uniform").

19      Here, Plaintiff seeks to certify a single class of Wag walkers, and a single

20  collective, for which all of the same Wag walkers are eligible to opt in. All members of

21  the proposed class are entitled to the same benefits, proportionate to their Compensable

22  Walks. If they elect not to opt into the FLSA collective, they will not receive an

23  upwards adjustment for releasing their FLSA claims. The dollar amounts paid will thus

24  vary by amount of service (but will remain proportionate) and by the class member's

25  choice whether to opt into the FLSA collective, with the same multiplier available to

26  everyone who opts in. Although Plaintiff Darsey will receive an additional service

27  award as approved by the Court, not to exceed $15,000, the extra payment is for the

28

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

service he performed on behalf of the entire class. Service awards to named plaintiffs in a class action are permissible. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003) (service awards to named plaintiffs in class action are permissible and not unfair or unreasonable; court should consider the actions plaintiff has taken to protect the interests of the class, degree to which the class has benefitted, amount of time and effort the plaintiff expended in the litigation, and reasonable fear of retaliation).

### 3.    The Settlement Has No Obvious Deficiencies and Falls Within the Range of Possible Approval

To assess whether a settlement is "fundamentally fair, adequate and reasonable," and thus within the range of possible judicial approval, courts typically assess: (1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The final factor, the reaction of the class, cannot yet be evaluated; however, the other factors confirm this settlement to be advantageous to the class and worthy of approval.

#### a.    The Strength of Plaintiff's Case

If the litigation were to proceed, Plaintiff believes he could demonstrate that he was misclassified as a contractor, as were other members of the settlement class. Plaintiff could present evidence of amounts for which Defendants would be liable, including penalties, unreimbursed expenses, and unpaid wages. Under California law, the putative employer must prove the workers were in fact bona fide independent contractors, and Plaintiff believes that Defendants here could not meet that burden. Plaintiff would thus have a strong case for misclassification under California law. Similarly, Plaintiff believes the control exercised by Defendants over the Wag walkers

---

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

1  would establish employee status under the FLSA, though this is less clear than under

2  California law. However, even if walkers were misclassified, damages would be

3  subject to vigorous challenge by Defendants. Defendants provided evidence that Wag

4  walkers generally took only a few assignments a month, defeating or reducing liability

5  for unreimbursed travel, time between assignments, overtime, and meal and rest break

6  entitlements, and posing a certification challenge. (*See* Hua Decl. ¶¶ 23, 24, 25.)

7      A more fundamental problem is that, were this litigation to proceed, Defendants

8  would invoke individual arbitration agreements to bar the vast majority of settlement

9  class members from participating, or to attack Plaintiff's typicality. (Hua Decl. ¶ 26.)

10  Plaintiff will discuss this below, but it could vitiate any class, leaving only a handful of

11  class members. Finally, if Plaintiff were successful in certifying and maintaining a

12  class, if the case were to proceed to trial, and if Plaintiff were to prevail at trial and on

13  appeal, class wide recovery would not come for years. Any such award would need to

14  be distributed using addresses that could be years out of date, making it more difficult

15  to ensure proper notice. In other words, an ultimate victory, coming perhaps years

16  from now, is a questionable prospect and would likely not deliver such immediate and

17  useful recovery to the settlement class as the settlement before the Court.

18              **b.    The Risk, Expense, Complexity, and Likely Duration of**

19                      **Further Litigation**

20      Almost all class actions involve a high level of risk, expense, and complexity,

21  which is one reason that judicial policy so strongly favors resolving class actions

22  through settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th

23  Cir. 1998). If the parties had been unable to resolve this case through settlement, the

24  litigation would likely have been protracted and costly, and there was significant risk

25  the action could not have been maintained as to the current putative class.

26      At the time of mediation, in February 2018, it appeared that California's familiar

27  *Borello* test would provide the rule of decision for the status of putative class members

28

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

under California law. *Cf. S.G. Borello & Sons, Inc. v Dept. of Industrial Relations*, 48 Cal. 3d 341, 350-52 (1989). While Plaintiff believes he would have prevailed under *Borello* (and the FLSA's economic realities test), this multi-factor balancing test posed doubts about success on the merits for Plaintiff's argument. Further, Defendants asserted that the vast majority of putative class members had enforceable arbitration agreements with class waivers—fewer than a *third of one percent* of walkers had opted out of arbitration. (Hua Decl. ¶ 26.) This could have required individual arbitrations or barred certification of a class containing such persons, reducing the putative class to a tiny fraction of its current size and rendering it unlikely that most of the putative class would ever seek adjudication of their claims. (The parties agreed to hold this issue in abeyance pending mediation.) Despite strong federal law enforcing arbitration agreements, even with a class action waiver, Plaintiff was then able to invoke *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), for the proposition that, at least in the Ninth Circuit, such an agreement was unenforceable as an unfair labor practice violating the National Labor Relations Act. Both sides thus faced doubt and risk.

Then, on April 30, 2018, the California Supreme Court decided *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), changing the landscape of contractor misclassification cases in California. First, the burden of proving bona fide independent contractor status now rests firmly on the putative employer. *See id.* at 956-57. Second, *Dynamex* required the hiring entity to prove *each* of three factors:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Id.* at 957. Given the apparent difficulty that Defendants here would have in meeting this burden of proof, particularly on the first and second prongs, it briefly seemed there was no longer much risk to Plaintiff's case on the merits. Nevertheless, there remain significant unsettled questions after *Dynamex*; as relevant here, this includes whether it will apply to reimbursement claims under Labor Code section 2802. *Cf. id.* at 956-57 (adoption of the "ABC test" is in context of the standard for California wage orders).

A scant three weeks later, on May 21, 2018, the United States Supreme Court decided *Epic Systems Corp. v. Lewis*, — U.S. —, 138 S. Ct. 1612, 200 L.Ed. 2d 889 (2018). *Epic Systems* reversed *Morris*, making clear that arbitration agreements barring class actions are *not* an unfair labor practice. The Supreme Court thus removed the clearest argument against enforcing the class waiver arbitration agreements. While Plaintiff could have advanced other arguments against the arbitration agreements here, *Epic Systems* undeniably cast significant doubt on Plaintiff's ability to maintain this case as a class action, or at least one with a scale bearing any resemblance to the case at bar. This development more than offsets the effect of *Dynamex*, and reinforces that the instant settlement does in fact offer significant benefits to the settlement class, which they would likely not receive absent this settlement.

Plaintiff's FLSA claims are likewise risky. The test for employment status under the FLSA is the economic realities test, which resembles the California common-law test in focusing on the hiring party's right to control the manner and means by which the product is accomplished. *See Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945 (9th Cir. 2010). Relevant factors include: (1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

1  hiring party; (10) whether the hiring party is in business; (11) provision of employee

2  benefits; and (12) the tax treatment of the hired party. *Id.* at 945-46. While Plaintiff

3  believes these factors favor a finding of employee status, the result is far from certain.

4       It is not uncommon for wage and hour class actions to take years to resolve,

5  requiring many attorney hours, and even then, most such actions ultimately settle.

6  Before any trial in this case, the parties likely would have briefed a motion to compel

7  arbitration, a motion to dismiss, class certification (along with a potential appeal), and

8  summary judgment, in addition to considerable electronic discovery, depositions, and

9  expert witnesses. It is therefore unlikely the case would reach trial before late 2019,

10  with post-trial activity to follow. By that time, many more putative class members

11  would have separated from Defendants and potentially moved away, making it more

12  likely they would never receive notice of any award or settlement.

13      **c.**    **The Risk of Maintaining Class Action Status Through Trial**

14       Were litigation to continue, Plaintiff would face risk that this claims of the vast

15  majority of settlement class members would be compelled into individual arbitrations.

16  This would leave just a fraction of the current putative class and would present a

17  significant barrier to certification. *Cf., e.g.*, *Tan v. GrubHub, Inc.*, No. 15-cv-05128-

18  JSC, 2016 WL 4721439, at *1 (N.D. Cal. July 19, 2016) (denying class certification

19  because plaintiff, who opted out of arbitration agreement, was neither typical nor an

20  adequate representative for those who signed arbitration agreement). "The value of a

21  class action 'depends largely on the certification of the class,' and [] class certification

22  undeniably represents a serious risk for plaintiffs in any class action lawsuit." *Acosta v.*

23  *Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) (quoting *In re GMC Pick-Up*

24  *Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d. Cir. 1995)); *see also Byrne*

25  *v. Santa Barbara Hosp. Servs., Inc.*, No. EDCV17527JGBKKX, 2017 WL 5035366, at

26  *9 (C.D. Cal. Oct. 30, 2017) ("The risk, expense, complexity, and likely duration of

27  further litigation weigh in favor of preliminary approval. Without the Settlement

28

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive."). Plaintiff believes this case should be certified, but potentially having the putative class gutted because nearly all of the putative class members waived the right to participate in class proceedings is a grave concern. Moreover, certification proceedings are highly discretionary, and there is always a risk the Court would deny certification or decline to certify the class Plaintiff seeks.

### d.    The Amount Offered in Settlement

While continued litigation offers the uncertainty of class certification and the serious risk that Defendants would succeed in the argument that any claims of absent putative class members would have to be arbitrated on an individual basis, the proposed settlement would provide class members with real monetary relief, tied to the number of walks each settlement class member has worked for Defendants. (Hua Decl. ¶ 28.) The formula adopted in the settlement adjusts the ratio of each settlement class member's recovery based on whether he or she opts into the FLSA collective. (*Id.*)

Thus, if fewer members of the Settlement Class opt into the FLSA collective, the proportionate shares of the Net Settlement Amount will be marginally larger for those not opting in, and those Settlement Class Members not opting in would receive a slightly higher share of the settlement. Similarly, if more members of the putative class opt out of the settlement completely, the proportionate shares of the Net Settlement Amount will be marginally larger for the remaining Settlement Class Members. (*Id.*) Consequently, it is impossible to state precisely what range of recoveries would exist.

However, data provided by Defendants allows a rough estimate of recoveries. The average number of walks per Settlement Class Member is approximately 36. Defendants provided data to show what percentage of walkers performed certain ranges of walks, e.g., 1-24 walks were performed by 77% of the walkers, 25-50 walks were performed by 9% of walkers, and so on up to the top band, 251+ walks, which

were performed by only 2% of the walkers. If the Court were to approve the requested class representative enhancement, LWDA payment, and class counsel fees and costs, the Net Settlement Fund would be $617,079.60. The proposed settlement class currently encompasses 37,541 part-time, sporadic Wag walkers, which is typical in the gig economy related to dog-walkers. This would yield an average recovery of about $17 per Settlement Class Member. (Hua Decl. ¶ 29.) While this number may seem small when compared to a typical employee salary, it is important to remember these are occasional gig economy workers, making *far* less than a full-time employee. Defendants' data reflect that in 2017, the average amount paid to each Settlement Class Member for the *entire year*, in both fees and tips, was just $598.92. Thus, the average recovery would represent about 3% of the annual amount paid to each Settlement Class Member. (*Id.*) (To illustrate, 3% of the salary of a hypothetical worker making $50,000 per year would be $1,500, a substantial amount.) It is difficult to predict high and low recovery numbers with any precision at this time, but using Defendants' information, and assuming an FLSA opt-in rate of approximately 10% of the total Settlement Class, we estimate that a walker in the median of the lowest band of walks would receive about $6.68 if he or she did not opt in to the FLSA Collective, while a walker well into the top band of walks would receive about $194.73, if he or she did opt into the FLSA Collective. (*Id.*) Again, this is a benefit the Settlement Class, or at least the vast majority of its members, who have agreed to arbitrate and waive class claims, would likely not receive at all absent this settlement.

### e.    The Experience and Views of Counsel

Proposed Class Counsel Nicholas T. Hua and Giacomo Gallai are experienced employment attorneys who have litigated many wage and hour actions both on behalf of Plaintiffs and Defendants and have both been named class counsel before. Moreover, Mr. Hua and proposed Class Counsel Steven C. Gonzalez are also experienced in class litigation on behalf of defendants where Mr. Gonzalez has

1 represented such companies as Walmart, Smart & Final, Apartment Management

2 Consultants, Western Merchandise Express, Shurgard Storage, and Trumpet

3 Behavioral Health, among others. (Hua Decl. ¶¶ at 19, 20.)

4     Based on their experience in similar cases, and their familiarity with the

5 strengths and weaknesses of this particular case, Plaintiff's counsel believes the

6 proposed settlement to be in the best interests of the class and respectfully request that

7 the Court approve it.

8 **C.     The Proposed Settlement Satisfies Rule 23**

9     **1.     The Settlement Class Meets the Requirements of Rule 23(a)**

10     In connection with granting preliminary approval, the Court should also confirm

11 that the proposed settlement class meets the requirements of Rule 23. *See Amchem*

12 *Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997);

13 Manual, § 21.632. The prerequisites for class certification under Rule 23(a) are (1)

14 numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, each

15 of which is satisfied here. *See* Fed. R. Civ. P. 23(a); *Hanlon v. Chrysler Corp.*, 150

16 F.3d 1011, 1019 (9th Cir. 1998).

17     The parties' proposed settlement class encompasses approximately 37,541 Wag

18 walkers, and thus readily satisfies the numerosity requirement. *See Hanlon*, 150 F.3d at

19 1019 ("The prerequisite of numerosity is discharged if 'the class is so numerous that

20 joinder is impracticable.'") (quoting Fed. R. Civ. P. 23(a)(1)).

21     The proposed settlement class also satisfies the commonality requirement of

22 Rule 23(a). "Commonality exists where class members' situations share a common

23 issue of law or fact, and are sufficiently parallel to insure a vigorous and full

24 presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617

25 F.3d 1168, 1172 (9th Cir. 2010) (internal quotations omitted). Each of the Settlement

26 Class Members worked as a Wag walker for Defendants and was classified and treated

27 as an independent contractor. None of the Settlement Class Members were reimbursed

28

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

for expenses they incurred, such as mileage or other transportation costs to travel between assignments. (Hua Decl. ¶ 31.) The common issues the Settlement Class Members' claims share include (i) whether they were misclassified as independent contractors when they should have been classified and treated as employees; (ii) whether they were paid properly for their time; (iii) whether they are entitled to penalties for their misclassification and Defendant's violations of the Labor Code; (iv) whether Defendants provided the Settlement Class Members with legally compliant wage statements, the failure to do which would result in statutory penalties payable to the employees; and (v) whether Defendants' conduct violates the FLSA, the California UCL, PAGA, and other statutes. (First Amended Complaint, ¶¶ 53-112.)

The final requirements of Rule 23(a)—typicality and adequacy—are satisfied by the proposed representative Plaintiff. Like the other members of the settlement class, Plaintiff worked as a Wag walker for Defendants, was classified and treated as an independent contractor, and was required to incur expenses for which he was not reimbursed. Moreover, like the other members of the settlement class, Plaintiff was subject to Defendant's policies, which Plaintiff contends exercise a significant degree of control, and Plaintiff performed work that is part of the usual course of Defendants' business, walking dogs and caring for the dogs of Defendants' customers. Consequently, Plaintiff and the other members of the settlement class suffered the same or similar alleged injury—namely, they were misclassified as independent contractors when they should have been classified as employees. *See Wolin*, 617 F.3d at 1175 (typicality can be satisfied despite different factual circumstances surrounding the manifestation of the injury). In addition, Plaintiff is an adequate class representative with no conflicts of interest and is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

## 2.    The Settlement Class Meets the Requirements of Rule 23(b)(3)

"In addition to meeting the conditions imposed by Rule 23(a), the parties

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed settlement class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the controversy. *Id.*

Settlement class members' claims depend in part on whether Defendants' policies governing the work they performed as Wag walkers constituted a significant exercise of control and direction over their performance of the work; thus, these claims raise just the sort of predominantly common questions courts have found to justify class treatment. *See, e.g.*, *Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-CV-00824 JWS, 2015 WL 1292444, at *12 (D. Ariz. Mar. 23, 2015) (certification appropriate where putative employees' relationship with defendants is primarily governed by uniform policies); *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 606 (N.D. Cal. 2014) (question of whether plaintiffs are independent contractors or employees is susceptible to classwide treatment because of defendant's uniform policies and practices as to its drivers; therefore, this common legal issue is sufficient to meet the commonality requirement); *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 604 (S.D. Cal. 2010) (all members of putative class were classified as independent contractors pursuant to the same agreement; moreover, the merits of that classification turn on the same set of considerations, which is enough to satisfy the commonality requirement). Moreover, the *Dynamex* decision's simplification of the test for employment status, to focus on whether the type of *work* performed was within the usual course of Defendants' business, poses an even more obvious common question.

Similarly, there can be little doubt that resolving all settlement class members' claims through a single class action is superior to a series of individual lawsuits or arbitrations. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

1  less litigation or settlement leverage, significantly reduced resources and no greater

2  prospect for recovery." *Hanlon*, 150 F.3d at 1023. Finally, in the settlement context,

3  there can be no objection here that class proceedings would present the sort of

4  intractable management problems that sometimes override the collective benefits of

5  class actions, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

6  **D.    The Proposed Settlement of FLSA Claims Satisfies 29 U.S.C. § 216(b)**

7        District Courts may approve settlements of FLSA claims, particularly in a

8  lawsuit by employees under 29 U.S.C. § 216(b), which demonstrates an adversarial

9  context. *See Lynn's Food Stores*, 679 F.2d at 1353-54. "If a settlement in an employee

10 FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage

11 or computation of back wages, that are actually in dispute, we allow the district court

12 to approve the settlement in order to promote the policy of encouraging settlement of

13 litigation." *Id.* at 1354.

14       Here, there are genuinely disputed issues meriting a compromise. These include

15 whether Plaintiff could in fact demonstrate misclassification under the FLSA economic

16 realities test, which is far more clement to employers than the California *Dynamex*

17 "ABC" test. Also in dispute is whether the existence of arbitration agreements

18 containing class waivers for the vast majority of the putative class would effectively

19 vitiate any collective action. As such, the compromise here nets an economic benefit

20 for potential members of the collective action settlement that they would simply not

21 obtain absent this settlement.

22       **V.    THE COURT SHOULD APPROVE THE PROPOSED PAGA**

23                                **SETTLEMENT**

24       This settlement includes an allocation of funds to settle Plaintiff's representative

25 claims under PAGA. California law requires judicial approval of any settlement under

26 PAGA. *See* Cal. Lab. Code § 2699(*l*)(2) ("The superior court shall review and approve

27 any settlement of any civil action filed pursuant to this part."). Here, the parties have

28

1  allocated nearly 5% of the total settlement amount to cover PAGA claims. Compliance

2  with LWDA notice requirements and payment of 75% of PAGA penalties to the

3  agency favors approval of settlement. *See McKenzie v. Fed. Exp. Corp.*, No. CV 10–

4  02420 GAF (PLAx), 2012 WL 2930201, at *6 (C.D. Cal. July 2, 2012).

5  **VI.   THE COURT SHOULD ORDER THE PROPOSED CLASS NOTICE**

6  **A.   The Settlement Provides the Best Notice Practicable**

7  The federal rules require that in connection with a proposed settlement or

8  compromise, "[t]he court must direct notice in a reasonable manner to all class

9  members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the

10  settlement class is certified under Rule 23(b)(3), the notice must be the "best notice

11  that is practicable under the circumstances, including individual notice to all members

12  who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

13  Plaintiff here proposes to provide individual notice, through the Settlement

14  Administrator, by U.S. Mail. (Hua Decl. ¶ 17 & Ex. A at § 6.2.) The parties have

15  selected Rust Consulting, an experienced third-party administrator, to handle the

16  mailing, using last known address data from Defendants, checked against the National

17  Change of Address Database. (Hua Decl. ¶ 15 & Ex. A at § 6.2.) Any Notice Packets

18  returned as non-delivered by the Response Deadline will be forwarded to any

19  forwarding address provided, and if there is no forwarding address, the Settlement

20  Administrator will attempt to determine a correct address via skip-tracing or other

21  search using the name, address, and/or Social Security number of the Settlement Class

22  Member, to allow remailing. (Hua Decl. Ex. A at § ¶ 6.3.) If any Notice Packets are

23  undeliverable for Settlement Class Members who remain active on the Wag app and no

24  forwarding address is provided, Defendants will request the currently active Settlement

25  Class Member provide a corrected address, to allow remailing. (*Id.*) Settlement Class

26  Members sent a re-mailed Notice Packet will have an additional fifteen (15) days from

27  the original response deadline to submit any response. (*Id.*)

28

1    Plaintiff requests that the Court approve this method of notice as the best

2    practicable under the circumstances. *See, e.g.*, *Rannis v. Recchia*, 380 F. App'x. 646,

3    650 (9th Cir. 2010) (finding mailed notice to be the best notice practicable where

4    reasonable efforts were taken to ascertain class members addresses).

5    **B.      The Proposed Form of Notice Adequately Informs Class Members of Their**

6    **Rights in Connection with the Settlement**

7    The notice provided to class members should "clearly and concisely state in

8    plain, easily understood language" the nature of the action; the class definition; the

9    class claims, issues, or defenses; that a class member may appear through counsel if

10   desired; that the court will exclude from the class any member who requests exclusion;

11   the time and manner for requesting exclusion; and the binding effect of a class

12   judgment on members. Fed. R. Civ. P. 23(c)(2)(B). The form of notice proposed by

13   Plaintiff here complies with these requirements. The notice sent to all class members

14   through U.S. Mail will explain the terms of the settlement, the class definition, the

15   underlying litigation and Defendants' defenses, the fact that class members may appear

16   through counsel, that they may opt out via use of an enclosed form, that they may

17   participate in the FLSA collective via use of an enclosed form, and that they will be

18   bound with regard to non-FLSA claims if they do not request exclusion from the Court

19   and bound with regard to FLSA claims as well if they request to opt in to the FLSA

20   collective. (Hua Decl. ¶ 17.)

21   Plaintiff believes that is the most effective way to alert class members to the

22   existence of the settlement and convey detailed information about the settlement

23   approval process, and accordingly asks that the Court approve the proposed form of

24   notice. *See Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673-MMM, 2012 WL

25   10274679, at *8-9 (C.D. Cal. Nov. 13, 2012) (approving a similar notice plan

26   involving use of National Change of Address Database, remailing to update addresses,

27   and use of skip tracing).

28

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

**C.    Notice of the Settlement Will Be Provided to Appropriate Officials**

Class Counsel will provide notice of the proposed settlement to the California Labor and Workforce Development Agency, as required by California law. *See* Cal. Lab. Code § 2699(*l*)(2) ("The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court."). Defendants' counsel will provide notice of settlement to appropriate state and federal officials under 28 U.S.C. § 1715.

## VII.   THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL

The next steps in the settlement approval process are to schedule a final approval hearing, notify the proposed class of the settlement and hearing, allow members of the proposed class to opt out of the class, or to opt in to the FLSA collective, afford class members an opportunity to file any objections or comments regarding the settlement, and provide for any objector discovery, if merited. *Cf.* Manual, §§ 21.632, 21.633. As such, Plaintiff provides the Court with a proposed order that provides a schedule and deadlines for those milestones. Further, Plaintiff asks the Court to set a date for the final fairness hearing, notice of which will be provided as part of the Notice Packet.

## VIII.  CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's unopposed motion, preliminarily approve the settlement, certify the Settlement Class and FLSA Collective, approve Rust Consulting, Inc. as Claims Administrator, appoint Plaintiff Darsey as Class Representative and Hua Gallai, LLP as Class Counsel, authorize the mailing of the Notice Packet to the Settlement Class, and schedule a final fairness approval hearing date.

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

DATED: September 27, 2018          By: ___/s/_____
                                        Steven C. Gonzalez
                                   Attorneys for Plaintiff
                                   GARY D. DARSEY, individually, and on
                                   behalf of others similarly situated

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT