**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY D. DARSEY, individually, and on behalf of himself and all others similarly situated, | Case No. CV 17-7014 FMO (JPRx) |
| Plaintiff, | **ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| WAG LABS, INC., et al., | |
| Defendants. | |

Having reviewed and considered Plaintiff's Motion for Final Approval of Class Action Settlement, (Dkt. 45, "Motion"), and Plaintiff's Motion for Approval of Attorney's Fees and Costs, and Request for Incentive Award for Named Class Representative, (Dkt. 44, "Fees Motion"), and the oral argument presented during the final fairness hearing held on October 24, 2019, the court concludes as follows.

## BACKGROUND

This case arises from allegations that defendants, who operate a website and mobile app that allows dog owners to reserve and purchase dog walking services, misclassified its dog walkers as independent contractors. (See Dkt. 30, First Amended Class Action and Representative Action Complaint ("FAC") at ¶¶ 1-2, 4). Plaintiff, a former dog-walker, alleges that Wag also "maintained a policy and practice of forcing Plaintiffs to work off the clock without wages

by compensating Plaintiffs only from the time that dogs are harnessed up and headed out of the customers' home to completion of bringing the dogs back into the customers' house, without regards to the preparation time before and after the dog walks."  (Id. at ¶ 3).

Following an all-day mediation session with mediator Louis Marlin ("Marlin"), and subsequent negotiations over several months, the parties reached a settlement.[1] (Dkt. 43, Court's Order of June 18, 2019 ("Preliminary Approval Order" or "PAO") at 2).  The parties defined the settlement class as "all individuals who performed dog walks in California during the Settlement Class Period[, September 22, 2013, through the date of preliminary approval] using the Wag app."  (Dkt. 32-4, Stipulation of Settlement of Class Action and Release of Claims ("Settlement Agreement") at §§ 1.27, 1.5; Dkt. 43, PAO at 3).

Pursuant to the settlement, defendants will pay a non-reversionary settlement amount of $1,050,000, which will be used to pay the class, the FLSA collective action members,[2] the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"), attorney's fees and costs, and the class representative service award.  (See Dkt. 32-4, Settlement Agreement at §§ 1.13, 3.1).  The settlement provides for up to $375,000 in attorney's fees, (id. at § 7.5); costs not to exceed $5,420, (id.); an incentive payment to Darsey of up to $15,000,[3] (id. at § 7.4); and $37,500 to the LWDA.  (Id. at § 7.6).  Amounts not approved by the court will revert to the net settlement fund, (see id. at §§ 7.4-7.5), which will be used to pay class members.[4]

---

[1]  Plaintiffs represent that no additional agreements have been made in connection with the settlement.  (See Dkt. 45-1, Memorandum of Points and Authorities in Support of Unopposed Motion for Final Approval of Class Settlement ("Memo") at 20-21; Fed. R. Civ. P. 23(e)(3) (requiring parties to "identify[] any agreement made in connection" with the settlement proposal).

[2]  FLSA collective action members were required to submit an opt-in form.  (See Dkt. 32-4, Settlement Agreement at § 1.11).

[3]  Darsey has reduced his incentive payment request to $5,000.  (See Dkt. 45-1, Memo at 4 n. 2).

[4]  The determination of each class member's share of the net settlement fund will be based on the total "Compensable Walks" for all class members.  Class members who opt in to the FLSA collective action will each be treated as having 125% of, or 1.25 times, their respective Compensable Walks.  The Compensable Walks for each class member will be divided by the total Compensable Walks for all settlement class members.  This will yield a payment ratio for each

On June 18, 2019, the court granted preliminary approval of the settlement, appointed Rust Consulting, Inc. ("Rust") as settlement administrator, and directed Rust to provide notice to the class members.  (See Dkt. 43, PAO at 20-21).  Rust implemented the notice program approved by the court, (see Dkt. 45-1, Memo at 5-6; Dkt. 45-5, Declaration of Abigail Schwartz ("Schwartz Decl.") at ¶¶ 7-14, Dkt. 45-6, Exh. A to Schwartz Decl. (Notice Packet); Dkt. 43, PAO at 18-20 (approving notice program)), and, after checking and updating addresses via a National Change of Address search, sent notice via U.S. Mail to 56,157 class members.[5]  (See Dkt. 45-5, Schwartz Decl. at ¶¶ 9-10).  As of September 30, 2019, Rust had received 62 valid requests for exclusion[6] and no objections.[7]  (See id. at ¶¶ 19-20).

Plaintiff now seeks:  (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payment for plaintiff.  (See Dkt. 45, Motion; Dkt. 44, Fees Motion).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule[8] 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982).

---

settlement class member, which will be applied to the net settlement amount to calculate each member's estimated individual settlement payment.  (See Dkt. 32-4, Settlement Agreement at §§ 1.8, 7.3; Dkt. 43, PAO at 3 n. 3).

[5]  The number of class members increased from 37,541 (see Dkt. 43, PAO at 8) to 56,157.  (See Dkt. 45-1, Memo at 5-6 n. 4).  A total of 6,632 Notices were undeliverable.  (See Dkt. 45-5, Schwartz Decl. at ¶ 11).

[6]  There were a total of 74 requests for exclusion submitted.  However, ten were submitted by individuals who did not perform any walks in California, and thus, fell outside the class definition, and two were submitted after the deadline.  Also, 20 additional class members disclosed that they did not conduct such walks, and have since been removed from the Class.  (See Dkt. 45-5, Schwartz Decl. at ¶ 19).

[7]  Counsel confirmed at the Final Approval hearing that no objections had been received since the filing of the pending motions.

[8]  All "Rule" references are to the Federal Rules of Civil Procedure.

1   Whether to approve a class action settlement is "committed to the sound discretion of the trial

2   judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting Officers

3   for Justice, 688 F.2d at 625), who must examine the settlement for "overall fairness[.]"   In re

4   Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019).   The court may not

5   "delete, modify or substitute certain provisions."   Id. (internal quotation marks omitted).   "[T]he

6   settlement must stand or fall as a whole."   Officers for Justice, 688 F.2d at 630.

7          In order to approve a settlement in a class action, the court must conduct a two-step

8   inquiry.[9]   First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have

9   been satisfied.   Second, it must conduct a hearing to determine whether the settlement agreement

10   is "fair, reasonable, and adequate[.]"   Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938,

11   959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard).   In determining whether a settlement

12   is fair, reasonable, and adequate, the court must weigh some or all of the following factors:   "(1)

13   the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

14   litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

15   in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

16   experience and views of counsel; (7) the presence of a governmental participant; and (8) the

17   reaction of the class members of the proposed settlement."[10]   In re Bluetooth Headset Prod. Liab.

18   _____

19       [9] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also
20   assess whether CAFA's notice requirements have been met.   See 28 U.S.C. § 1715(d).   Here,
     defendant's counsel provided the required CAFA notice on October 31, 2018, (see Dkt. 34,
21   Declaration of Aaron H. Cole Regarding Notice of Proposed Settlement Pursuant to 28 U.S.C. §
     1715 at ¶ 2), and received no objections to the settlement from the state and federal officials that
22   received the CAFA notices.   (See Dkt. 47, Declaration of Aaron H. Cole at ¶ 3).

23       [10] The 2018 amendments to Rule 23 provide further guidance for determining whether a
24   settlement is fair, reasonable, and adequate, including whether: "(A) the class representatives and
     class counsel have adequately represented the class; (B) the proposal was negotiated at arm's
25   length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and
     delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the
26   class, including the method of processing class-member claims; (iii) the terms of any proposed
     award of attorney's fees, including timing of payment; and (iv) any agreement required to be
27   identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to
     each other." Fed. R. Civ. P. 23(e)(2).   The Advisory Committee notes state that "[t]he goal of [the]
28   amendment [was] not to displace any factor" that courts considered prior to the amendment, "but

1   Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566,

2   575 (9th Cir. 2004)).

3       However, when "a settlement agreement is negotiated prior to formal class certification,

4   consideration of these eight [] factors alone is not enough[.]"   Bluetooth, 654 F.3d at 946

5   (emphasis in original).   This is because, "[p]rior to formal class certification, there is an even

6   greater potential for a breach of fiduciary duty owed the class during settlement." Id.; see Koby

7   v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement

8   is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs

9   and class counsel will breach the fiduciary obligations they owe to the absent class members.").

10  Thus, "such agreements must withstand an even higher level of scrutiny for evidence of collusion

11  or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's

12  approval as fair." Bluetooth, 654 F.3d at 946.   In assessing such an agreement, courts should

13  look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a

14  disproportionate distribution of the settlement, or when the class receives no monetary distribution

15  but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing'

16  arrangement[;]"[11] and "(3) when the parties arrange for fees not awarded to revert to defendants

17  rather than be added to the class fund[.]"   Id. at 947 (internal quotation marks and citations

18  omitted).

19  / / /

20

21  _____

22  rather to focus . . . on the core concerns of procedure and substance that should guide the
    decision whether to approve the proposal." 2018 Adv. Comm. Notes to Amendments to Rule 23.

23  The court addressed several of the factors set forth in the amended Rule 23(e) during the
    preliminary approval process. (See Dkt. 88, PAO at 16-17 (considering whether the settlement

24  was the product of arm's-length negotiations); id. at 17-20 (addressing whether recovery for the
    class is fair, adequate, and reasonable)).  In evaluating the settlement, the court will consider the

25  factors set forth by the Ninth Circuit, while also taking into account the Rule 23 amendments.

26
    [11]  The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of

27  attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one
    where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum

28  value." Id. at 940 n. 6.

**DISCUSSION**

I.     FINAL APPROVAL OF CLASS SETTLEMENT.

     A.     Class Certification.

     In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3).[12]  (See Dkt. 43, PAO at 8-14, 21).  Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).  See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3).   Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks omitted).

     B.     Rule 23(c) Notice Requirements.

     Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

     After undertaking the required examination, the court approved the form of the proposed class notice.  (See Dkt. 43, PAO at 18-21).  As discussed above, the notice program has been implemented by Rust.  See supra Background.  Accordingly, based on the record and its prior findings, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement.  (See Dkt. 43, PAO at 18-21; Dkt. 45-5, Schwartz Decl. at ¶¶ 7-14; Dkt. 45-6, Exh. A to Schwartz Decl. (Notice Packet)).

---

[12]  The court also preliminarily certified the FLSA collective, (see Dkt. 43, PAO at 14 n. 6), and sees no need to disturb that determination.

C.   Whether the Class Settlement is Fair, Adequate and Reasonable.

1.   **The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 975 (E.D. Cal. 2012) (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

Here, in granting preliminary approval of the settlement, the court recognized the "risks of continued litigation [were] significant" and that, when "[w]eighed against those risks" and the delay associated with continued litigation, the "benefits to the class" were within the range of reasonableness. (See Dkt. 43, PAO at 17). The settlement here affords class members monetary benefits in the face of various defenses to plaintiff's claims and substantial expense. (See id. at 16-17) (noting that vast majority of class members were subject to arbitration agreements). Under the circumstances, the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds that these factors support approval of the settlement.

2.   **The Risk of Maintaining Class Action Status Through Trial**.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 43, PAO at 8-14, 21). In deciding whether to certify the class for settlement purposes, the court determined that the requirements of Rule 23 for settlement purposes have been met. (See id.); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"). Nothing has been put forth to challenge or otherwise undermine the court's previous order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL

1   1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the
2   Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").
3   Accordingly, this factor weighs in favor of approving the settlement.

4             3.    **The Amount Offered in Settlement**.

5       "[T]he very essence of a settlement is compromise, a yielding of absolutes and an
6   abandoning of highest hopes." <u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1242 (9th Cir.
7   1998) (internal quotation marks omitted).  In granting preliminary approval, the court concluded
8   that the settlement benefits were fair, adequate, and reasonable in light of the litigation risks in the
9   case. (<u>See</u> Dkt. 43, PAO at 16-17).  Accordingly, this factor also weighs in favor of final approval.

10            4.    **The Extent of Discovery Completed and the Stage of Proceedings**.

11      "A court is more likely to approve a settlement if most of the discovery is completed
12  because it suggests that the parties arrived at a compromise based on a full understanding of the
13  legal and factual issues surrounding the case." <u>Spann v. J.C. Penney Corporation</u>, 211 F.Supp.3d
14  1244, 1256 (C.D. Cal. 2016) (quoting <u>Nat'l Rural Telecomms.</u>, 221 F.R.D. at 527).  The court
15  previously examined these factors at length, noting that the parties engaged in discovery, (<u>see</u>
16  Dkt. 43, PAO at 15), and "thoroughly investigated and considered their own and the opposing
17  parties' positions[,]" (<u>id.</u>), which enabled them to develop "a sound basis for measuring the terms
18  of the settlement against the risks of continued litigation[.]"  (<u>Id.</u>).  In other words, "the parties
19  entered the settlement discussions with a substantial understanding of the factual and legal issues
20  from which they could advocate for their respective positions."  <u>Spann</u>, 211 F.Supp.3d at 1256;
21  <u>Barbosa v. Cargill Meat Solutions Corp.</u>, 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required
22  is that sufficient discovery has been taken or investigation completed to enable counsel and the
23  court to act intelligently.") (internal quotation marks omitted).  This factor also supports approval
24  of the settlement.

25            5.    **The Experience and Views of Counsel**.

26      "Great weight is accorded to the recommendation of counsel, who are most closely
27  acquainted with the facts of the underlying litigation.  This is because parties represented by
28  competent counsel are better positioned than courts to produce a settlement that fairly reflects

1   each party's expected outcome in the litigation." Spann, 211 F.Supp.3d at 1257 (quoting Nat'l

2   Rural Telecomms., 221 F.R.D. at 528); see also Fed. R. Civ. P. 23(e)(2)(A) (courts should

3   consider whether "class counsel have adequately represented the class").[13] Here, class counsel,

4   who adequately represented the class, (see Dkt. 43, PAO at 11), view the settlement as "fair,

5   adequate, [and] reasonable, and in the best interests of the class." (Dkt. 45-2, Declaration of

6   Nicholas T. Hua in Support of Unopposed Motion for Final Approval ("Hua Decl.") at ¶ 27).  Thus,

7   this factor also supports approval of the settlement.

8            **6.**    **The Presence of a Governmental Participant**.

9       There is no government participant in this matter.  Accordingly, this factor is inapplicable.

10  See Spann, 211 F.Supp.3d at 1257 (concluding "[t]here is no government participant in this

11  matter[,]" rendering "this factor [] not relevant.").

12           **7.**    **The Reaction of Class Members to the Proposed Settlement**.

13      The absence of a large number of objections and exclusions to a proposed class action

14  settlement supports approval of a settlement.  See Spann, 211 F.Supp.3d at 1257 ("It is

15  established that the absence of a large number of objections to a proposed class action settlement

16  raises a strong presumption that the terms of a proposed class settlement action are favorable to

17  the class members.").  Here, the reaction of the class has been very positive.  Significantly, there

18  were only 62 requests for exclusion and no objections.  (See Dkt. 45-5, Schwartz Decl. at ¶ 19;

19  Dkt. 45-1, Memo at 5, 22).  The lack of objections and limited requests for exclusion support

20  approval of the settlement.  See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14

21  (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class

22  members – less than one percent – opted out, and there were no objections to the settlement);

23  Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less

24  than two percent of the class members opted out and no objections were received); Barcia v.

25

26          [13]  In its Preliminary Approval Order, the court found that plaintiff was an adequate class

27  representative.  (See Dkt. 43, PAO at 10-11); Fed. R. Civ. P. 23(e)(2)(A) (in approving class action
      settlements courts should consider whether "the class representatives . . . have adequately

28  represented the class").

1  Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor

2  of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and

3  there were no objections).

4          D.      Whether there are Signs of Collusion.

5          "When, as here, the settlement was negotiated before the district court certified the class,

6  there is an even greater potential for a breach of fiduciary duty by class counsel, [the Ninth Circuit]

7  require[s] the district court to undertake an additional search for more subtle signs that class

8  counsel have allowed pursuit of their own self-interests and that of certain class members to infect

9  the negotiations." In re Volkswagen "Clean Diesel" Marketing Litig., 895 F.3d 597, 610-11 (9th Cir.

10  2018) (internal quotation marks omitted).  In granting preliminary approval of the settlement, the

11  court carefully scrutinized the settlement and determined that it was the product of arms-length

12  negotiations, (see Dkt. 88, PAO at 16-17), and that there was "no evidence that the settlement

13  [was] 'the product of fraud or overreaching by, or collusion between, the negotiating parties[.]'"

14  (Id.) (quoting Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009)).

15          Nothing has changed since preliminary approval to raise any red flags or "subtle signs" of

16  collusion.  No funds will revert to defendant, (see Dkt. 32-4, Settlement Agreement at § 3.1), and

17  although the Settlement Agreement includes a clear sailing provision, (see id. at § 7.5), the court

18  is persuaded that the provision does not undermine the fairness of the settlement.  See Bluetooth,

19  654 F.3d at 948.  Moreover, any fees not awarded to class counsel will be added to the settlement

20  fund from which payments to class members will be made.  See Russell v. Kohl's Department

21  Stores, Inc., 755 Fed.Appx. 605, 608 (9th Cir. 2018) (concluding that existence of clear sailing

22  provision did not undermine settlement in part because class counsel's fees "would come from a

23  common fund" and "fees not awarded to counsel . . . would not revert" to defendant).

24          In short, the court finds that the settlement is fair, reasonable, and adequate, and not the

25  product of collusion.

26  / / /

27

28

10

1    II.    ATTORNEY'S FEES, COSTS AND SERVICE AWARD.

2            The Settlement Agreement provides that defendants will not oppose class counsel's

3    request for an award of attorney's fees up to $375,000.00 out of the Settlement Fund.  (See Dkt.

4    32-4, Settlement Agreement at § 7.5).  Class counsel now seek such an award, which amounts

5    to approximately 30 percent of the gross settlement amount when combined with the estimated

6    settlement administration costs of $185,448 paid by defendants.  (See id.; Dkt. 44, Fees Motion

7    at 1; Dkt. 44-1, Memorandum of Points and Authorities in Support of Unopposed Motion for

8    Approval of Attorney's Fees and Costs, and Request for Incentive Award ("Fees Memo") at 1).

9            A.    Attorney's Fee Award.

10            Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

11   attorney's fees . . . that are authorized by law or by the parties' agreement."[14]  Fed. R. Civ. P.

12   23(h).  Attorney's fees in class actions are determined "using either the lodestar method or the

13   percentage-of-recovery method."   In re Hyundai, 926 F.3d at 570.   The court's discretion in

14   choosing between these two methods "must be exercised so as to achieve a reasonable result."

15   Bluetooth, 654 F.3d at 942; see id. (In class actions where a "settlement produces  a common

16   fund . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery

17   method."); In re Hyundai, 926 F.3d at 570.  The lodestar method is typically utilized when the relief

18   obtained is "not easily monetized," such as when injunctive relief is part of the settlement.  See

19   Bluetooth, 654 F.3d at 941.  The percentage-of-recovery method is typically used when a common

20   fund is created.  See id. at 942.

21            Under the lodestar method, the court multiplies the number of reasonable hours expended

22   by a reasonable hourly rate.  See Hanlon, 150 F.3d at 1029; In re Hyundai, 926 F.3d at 570.  Once

23   the lodestar has been determined, the "figure may be adjusted upward or downward to account

24   for several factors including the quality of the representation, the benefit obtained for the class,

25

26        [14]  Although the operative complaint asserts both state law claims and a FLSA claim, the court
     will exercise its discretion and apply federal law to the award of attorney's fees.  See, e.g.,
27   Hoffman v. Constr. Protective Servs., Inc., 2006 WL 6105638, *3 (C.D. Cal. 2006) ("Where the
     Complaint invokes both state and federal law, the method of calculating attorney's fees rests in
28   the Court's discretion.").

the complexity and novelty of the issues presented, and the risk of nonpayment." Hanlon, 150

F.3d at 1029; In re Hyundai, 926 F.3d at 570 (same).  However, "adjustments [to the lodestar

calculation] are the exception rather than the rule." Fischel v. Equitable Life Assurance Society

of U.S., 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks omitted); Johnson v. MGM

Holdings, Inc., 2019 WL 6464270, *1 (9th Cir. 2019).  Indeed, adjustment of the lodestar is

warranted only in "rare and exceptional cases[.]"  Bluetooth, 654 F.3d at 942 n. 7 (internal

quotation marks omitted).

 Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply

awards the attorneys a percentage of the fund sufficient to provide class counsel with a

reasonable fee." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998); In re Hyundai,

926 F.3d at 570 (same).  The Ninth Circuit "has established 25% of the common fund as a

benchmark[,]" Hanlon, 150 F.3d at 1029, "for a reasonable fee award[.]" Bluetooth, 654 F.3d at

942; In re Hyundai, 926 F.3d at 570-71 (recognizing the 25% benchmark and noting that the

percentage of the fund is "a rough approximation of a reasonable fee").  The 25% benchmark "can

be adjusted upward or downward, depending on the circumstances." In re Hyundai, 926 F.3d at

570; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark'

for a reasonable fee award, providing adequate explanation in the record for any 'special

circumstances' justifying a departure."); Six (6) Mexican Workers v. Arizona Citrus Growers, 904

F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by

a lodestar calculation, when special circumstances indicate that the percentage recovery would

be either too small or too large in light of the hours devoted to the case or other relevant factors.").

In determining whether to depart from the 25% benchmark, courts consider "all of the

circumstances of the case[,]" including the following factors:  (1) the results achieved for the class;

(2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the

fee; and (5) awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-

50 (9th Cir. 2002); Viceral v. Mistras Group, Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing

similar factors); In re Online DCD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015)

(explaining that "there are no doubt many factors that a court could apply in assessing an

attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

Here, class counsel seek a fee award pursuant to the percentage-of-the fund method. (See Dkt. 44-1, Fees Memo at 9-13).  Having considered the applicable factors set forth above, the court finds that the requested fee award of $375,000.00, which is approximately 30% of the common fund, is warranted under the circumstances of this case.  With respect to the first factor, the results obtained for the class, the court finds that counsel obtained an exceptional result given that an overwhelming majority of class members were subject to individual arbitration agreements. (See id. at 13; Dkt. 43, PAO at 16) (noting that only 136 out of approximately 50,000 dog walkers had opted out of Wag's arbitration agreement); Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) (noting that "the most critical factor is the degree of success obtained"); Vizcaino, 290 F.3d at 1048 ("Exceptional results are a relevant circumstance.").  For the same reason, the second factor, the risk of litigation, supports the fee request since the arbitration agreement signed by nearly all class members might have resulted in the denial of class certification, and thus denial of any recovery for class members.  See Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).

With respect to the third factor, the skill required and quality of work, the court finds that it is neutral.  While counsel is experienced and its work product was above-average, "litigation in this case has not been especially extensive," in that "Plaintiff did not face any motions to dismiss . . . and discovery was not far-ranging." McLeod v. Bank of America, N.A., 2019 WL 1170487, *6 (N.D. Cal. 2019); (see, generally, Dkt.).  The court also finds the fourth factor, the contingent nature of the fee, supports the fee request.  Finally, with respect to the fifth factor, awards made in similar cases, other courts have awarded fees above the 25% benchmark in wage-and-hour class actions.[15]  See, e.g., Gutierrez-Bejar v. SOS Int'l, LLC, 2019 WL 5683901, *10 (C.D. Cal. 2019) (awarding fees representing 29.33% of the settlement fund in wage and hour class action

---

[15]  A lodestar cross-check further supports the reasonableness of the fee request.  Based on counsel's lodestar of $293,077.50, (see Dkt. 44-1, Fees Memo at 14-15; Dkt. 44-3, Declaration of Nicholas T. Hua In Support of Motion for Attorney's Fees, Costs, and Incentive Award ("Hua Fees Decl.") at ¶ 14; Dkt. 44-5, Exh. 2 to Hua Fees Decl. (billing records), the fee request equates to a modest multiplier of 1.28.  (See Dkt. 44-1, Fees Memo at 15).

1 | asserting FLSA and state labor law claims).

2 |      Consideration of the foregoing factors, particularly the results achieved in the face of

3 | arbitration agreements, and the lodestar cross-check supports class counsel's request for

4 | attorney's fees of $375,000.00.

5 |      B.    <u>Costs</u>.

6 |      Class counsel seek $5,420.40 in costs.  (<u>See</u> Dkt. 44-1, Fees Motion at 17-18).  The court

7 | finds that the costs incurred by class counsel over the course of this litigation are reasonable, and

8 | therefore awards a total of $5,420.40 in costs.

9 |      C.    <u>Class Representative Service Award</u>.

10 |      "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

11 | are eligible for reasonable incentive payments."  <u>Staton</u>, 327 F.3d at 977; <u>see</u> <u>Wren v. RGIS</u>

12 | <u>Inventory Specialists</u>, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit

13 | that named plaintiffs in a class action are eligible for reasonable incentive payments, also known

14 | as service awards.").  Here, plaintiff requests that the court grant a service award in the amount

15 | of $5,000.  (<u>See</u> Dkt. 44-1, Fees Memo at 18-20).

16 |      Plaintiff now seeks an award of $5,000.  (<u>See</u> Dkt. 44-1, Fees Memo at 18).  Such an

17 | incentive award is presumptively reasonable, <u>see</u> <u>Dyer v. Wells Fargo Bank, N.A.</u>, 303 F.R.D. 326,

18 | 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable), and the

19 | court finds that it does not create a conflict of interest between plaintiff and class members.  <u>See</u>,

20 | <u>e.g.</u>, <u>In re Online DVD-Rental</u>, 779 F.3d at 947-48 (upholding reasonableness of $5,000 incentive

21 | awards that were roughly 417 times larger than $12 individual awards because the number of

22 | representatives was relatively small, and the total amount of incentive awards "ma[de] up a mere

23 | .17% of the total settlement fund").

24 | **<u>CONCLUSION</u>**

25 |      Based on the foregoing, IT IS ORDERED THAT:

26 |      1.  Plaintiff's Motion for Final Approval of Class Action Settlement **(Document No. 45)** is

27 | **granted** as set forth herein.

28 |      2.  The court hereby **grants final approval** to the parties' Stipulation of Settlement of Class

Action and Release of Claims (Document No. 32-4) and the Amendment to Stipulation of Settlement of Class Action and Release of Claims (Document No. 37-1) (collectively ("Settlement Agreement"). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiff's Motion for Approval of Attorney's Fees and Costs, and Request for Incentive Award for Named Class Representative **(Document No. 44)** is **granted** as set forth herein.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in §§ 1.5 and 1.27 of the Settlement Agreement.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiff Gary D. Darsey shall be paid a service payment of $5,000 in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $375,000.00 in attorney's fees, and $5,420.40 in costs in accordance with the terms of the Settlement Agreement.

8. The Claims Administrator, Rust, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9. The LWDA shall be paid $37,500 pursuant to the Settlement Agreement.

10. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

11. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

12. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

13.  Judgment shall be entered accordingly.

Dated this 3rd day of March, 2020.

_____
/s/
Fernando M. Olguin
United States District Judge